## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **AUSTIN SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action File No:** |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **ALIGHT SOLUTIONS,** | ) | |
| **LLC,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff Austin Smith ("Smith" or "Plaintiff") brings this action for relief and damages against Defendant Alight Solutions LLC ("Alight" or "Defendant") based on the following allegations and causes of action.

## NATURE OF THE ACTION

1.     This action to correct unlawful employment practices arises under the Family Medical Leave Act ("FMLA"), 29 U.S.C.A. § 2601 *et seq*. Smith brings claims for willful interference and willful retaliation under the FMLA on the grounds that Alight initially failed to provide Smith timely notice of his eligibility

1

for FMLA leave and ultimately terminated him for exercising his rights to take leave under the FMLA. Smith seeks economic compensatory damages, including back pay and lost benefits and liquidated damages, as well as attorneys' fees and costs of litigation.

## THE PARTIES

2.     At the time of the events alleged in this complaint, Plaintiff Smith was remotely employed by Alight while he resided in Gwinnett County, Georgia.

3.     Smith is an eligible employee as defined by the FMLA. He had been employed by Alight for more than 12 months and worked more than 1,250 hours in the 12 months preceding the onset of the health conditions for which he received leave.  29 U.S.C.A. § 2611(2)(a)(i)-(ii).

4.     Alight is a publicly traded information technology and consulting company that is an "employer" as defined by the FMLA. 29 U.S.C.A. § 2611(4)(A)(i).

## PERSONAL JURISDICTION

5.     Alight may be served by delivering service on its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

## SUBJECT MATTER JURISDICTION AND VENUE

6.      Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. §§1331 and 1343.

7.      Venue is proper in this court under 28 U.S.C.A. §1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this district and division.

## FACTUAL ALLEGATIONS

8.      Alight is a global information technology provider that specializes in the health care and human capital spaces. Alight creates and services the cloud-based infrastructure for systems such as health and wealth benefit administration, payroll services, and human resources ("HR") management.

9.      Smith began employment with Alight in March 2017 as a software systems architect. He was permitted to work remotely from his residence in Lawrenceville, Georgia.

10.      Smith's duties rapidly expanded to include responsibility for Alight's company-wide portfolio of developer, project management, and documentation tools and he oversaw the alignment of Alight's various platforms with its client's software. By 2019, Smith was one of the central members of the products design team at Alight.

11.    In 2018, Smith was violently attacked during a robbery of his home and suffered a traumatic brain injury ("TBI"), which in turn caused a series of recurrent health issues, including chronic headaches, periodic lapses in concentration, and blurred vision. The psychological aftermath of the attack caused Smith to undergo therapy and psychiatric care for a diagnosis of post-traumatic stress disorder ("PTSD"), severe depression, and anxiety. While Smith's challenges were manageable, they necessitated doctor's appointments during work hours and periodic time off for medical treatment and follow-up.

12.    In May 2019, James Phillips became Smith's project manager and direct supervisor. Soon after, Smith disclosed the TBI to Phillips to provide a rationale for his relatively frequent excused absences and to apprise Phillips that the TBI posed a risk of sudden complications or a medical crisis.

13.    Phillips reacted uncomfortably to Smith's disclosure, abruptly telling him, "I don't know why you are telling me this stuff." Soon after he notified Phillips of his medical issues, Smith noticed that Phillips started to leave him off intraoffice invites to departmental meetings and became increasingly unresponsive to emails from Smith, even ones marked as time sensitive.

14.    On the weekend of September 7-8, 2019, Smith was involved in a boating accident that caused him to suffer a concussion, his second head injury in

two years. On the morning of September 9, Smith texted Phillips to inform him of the re-injury and to apprise Phillips that he might require time off for treatment.

15.    Alight's HR protocols require that a supervisor with knowledge that an employee is experiencing a serious medical condition inform HR as soon as practicable, and HR in turn is obligated to promptly advise the employee of his/her rights and responsibilities under the FMLA.

16.    Phillips, rather than implement the immediate notification protocol, did not inform HR of Smith's injury until on or about September 16, and it was September 18 before HR fulfilled its FMLA eligibility notification obligations. The HR department acknowledged to Smith that a one-week delay was a violation of the notification protocol.

17.    Rather than follow Alight's policies regarding known injuries, Phillips instead abruptly informed Smith on September 11 that he was being placed on a performance improvement plan ("PIP") from September 12 to October 11. It was the first formal corrective action or performance write-up taken against Smith during his employment at Alight.

18.    The terms of the PIP included a detailed week-by-week accountability outline in which Smith was to deliver weekly outputs and updates to Phillips,

beginning almost instantly, on Friday, September 13.  The document explicitly stated that a failure to adhere to the timeline was a basis for immediate termination.

19.    Even after receiving the rights and responsibilities notice on September 18, Smith did not explore FMLA leave for a straightforward reason—he believed it would subject him to instant termination for failing to comply with the PIP's directives.  Rather than risk his job, Smith continued working and delaying comprehensive care from his second head injury.

20.    On October 2, 2019, after Smith sought help in coping from an agent in the employee assistance program, the agent made Smith aware that under company policy, the PIP would be tolled, or delayed, until the completion of any FMLA leave.  Smith then immediately applied for leave based on his residual side effects from the second head injury and a general condition of severe depression and heightened anxiety.

21.    Smith's initial leave was for a period of eight weeks, but he extended it to the full 12-week complement of FMLA leave at the recommendation of his treating physician, in order to adjust to a set of new medications.  During Smith's leave, he also received an updated diagnosis of severe attention deficit hyperactivity disorder ("ADHD").

22.    The Journal of Psychiatric Research has concluded that TBIs can trigger neurological changes that facilitate ADHD and that some of the persistent TBI impacts resemble ADHD-associated symptoms, including memory and attention impairment and diminished executive functions, including in planning and organization.[1]

23.    During Smith's FMLA leave, which ran from early October 2019 through early January 2020, Alight did not have a plan in place to temporarily fill Smith's position or reassign many of his job duties. Various colleagues who inquired about his well-being told Smith that his absence was creating a major void in the company's operations.

24.    Upon Smith's return on or about January 3, 2020, he immediately noticed that Phillips did not engage him in a discussion of a transition back to work or address his status with Alight. On January 10, 2020, Smith was informed in a virtual call with Phillips and the HR department that he was being terminated on the grounds that he had failed to satisfy the performance metrics in the PIP.

25.    Smith's termination was inconsistent with the protected status of FMLA leave, in that the FMLA effectively suspends an employee's work obligations for the duration of the leave.  Furthermore, in the sole week that Smith

---

[1]https://www.neurologyadvisor.com/topics/traumatic-brain-injury/traumatic-brain-injury-linked-to-adhd-diagnosis-in-adults/.

worked after returning from leave, Alight did not even provide Smith an updated assessment of performance expectations going forward. He soon discovered that his access to various internal networks had not been fully restored.

26.    The one-week gap between his return from FMLA leave and his termination supports the inference that Smith's extended leave was a but-for cause of his termination.

27.    As a result of Alight's retaliatory conduct, Smith has suffered monetary damages, including but not limited to back pay and front pay, the loss of benefits, and liquidated damages. Smith, whose base salary was $133,500 and whose compensation incentives might have augmented his income by another $42,000, remained unemployed for approximately 14 months.

28.    The actions of Smith's direct supervisor, James Phillips, also constituted interference with his rights under the FMLA, in that Phillips (1) failed to alert Alight's HR department that Smith suffered a potentially serious injury, which delayed Smith's exercise of his rights under the FMLA; (2) instituted a PIP that amounted to discouragement of Smith's exercise of his FMLA rights in that it pressured Smith to forego leave to satisfy the conditions in the PIP; and (3) neglected to advise Smith that the PIP would be delayed with no adverse consequence to Smith in the event he took FMLA leave.

29.    The aforementioned acts of interference caused direct prejudice to Smith by negatively affecting his decision to seek leave and the timing of his leave, which extended the time frame in which Smith was covered by the PIP.  Had Smith been given adequate information to assess his right to take FMLA leave, the PIP might have been limited in its duration to less than a week, making his eventual termination for failing to satisfy the terms of the PIP substantially less likely.

30.    The acts of interference and retaliation were willful violations of Smith's statutorily protected rights under the FMLA, which makes this cause of action timely. 29 U.S.C.A. § 2617(c)(2).

## COUNT I
### (Interference with FMLA leave)

31.    Plaintiff incorporates by reference all the preceding paragraphs of this complaint as though set forth fully and separately herein.

32.    Plaintiff was an eligible employee of an FMLA-defined employer, and he had a serious medical condition as defined by 29 U.S.C.A. § 2611(11) (B).

33.    Defendant interfered with Plaintiff's rights under the FMLA by willfully interfering with the exercise of his FMLA protected rights by means including but not limited to untimely notice of his rights and responsibilities under the FMLA, as well as actions designed to deter or discourage Plaintiff's exercise of his rights to FMLA leave.

34.    Plaintiff suffered harm from Defendant's interference in that his delayed taking of FMLA leave proximately contributed to the circumstances that led to his eventual termination.

35.    As a result of Defendant's willful interference with his rights under the FMLA, Plaintiff was deprived of wages, health insurance, savings contributions, retirement benefits, and other benefits.

36.    Smith is entitled to equitable and monetary relief, including back pay, front pay, interest on lost wages calculated at the prevailing rate, liquidated damages, and attorney's fees and costs of litigation. 29 U.S.C.A. §2617 (a)(1)(A)(i-iii); (a)(3).

## COUNT II
### (FMLA retaliatory termination)

37.    Plaintiff incorporates by reference all the preceding paragraphs of this complaint as though set forth fully and separately herein.

38.    Plaintiff was an eligible employee of an FMLA-defined employer and had a serious medical condition as defined by 29 U.S.C.A. § 2611(11)(B).

39.    Defendant terminated Plaintiff for exercising his rights to take leave under the FMLA.

40.     Defendant's retaliatory termination of Plaintiff was a willful violation of his rights under the FMLA.

41.      As a result of Defendant's willful violation of Plaintiff's rights under the FMLA, Plaintiff was deprived of wages, health insurance, savings contributions, retirement benefits, and other benefits.

42.     Plaintiff is entitled to equitable and monetary relief, including back pay, front pay, interest on lost wages calculated at the prevailing rate, liquidated damages, and attorney's fees and costs of litigation. 29 U.S.C.A. § 2617(a)(1)(A)(i-iii); (a)(3).

## **PRAYER FOR RELIEF**

Wherefore, based on the above-stated claims, Plaintiff demands a trial by jury and that the following relief be granted:

A.  Back pay, front pay, lost benefits.

B.  Liquidated damages.

C.  Attorneys' fees and costs of litigation.

D.  Prejudgment and post-judgment interest at the highest lawful rate.

E.  Such other equitable and monetary relief as the Court deems just and proper.

F.  A declaratory judgment that Defendant's actions violated Plaintiff's

rights under the FMLA.

Respectfully submitted the 8th day of September, 2022.

**HKM Employment Attorneys LLP**

*s/Artur Davis*
Artur Davis[2]
ASB-3672-D56A
2024 3rd Ave. North, Suite 307
Birmingham, AL 35203
adavis@hkm.com
Direct: 205-881-0935

*s/Jermaine Walker*
Jermaine "Jay" Walker
GA Bar No. 142044
3355 Lenox Rd. NE, Suite 705
Atlanta, GA 30326
jwalker@hkm.com
Direct: 404-301-4020

---

[2] Artur Davis will promptly file for admission *pro hac vice* as an attorney of record in this action. Davis is licensed in the state of Alabama and the District of Columbia.